850500541|ORIG NOTE|2007-10-23

MERS MIN: 8000101-0000004416-3

## PROMISSORY NOTE

$15,000,000.00                          New York, New York
March 1, 2007

FOR VALUE RECEIVED, **MS-GRAND HOLDINGS ILLINOIS, LLC**, an Illinois limited liability company, as maker, having its principal place of business at 4800 Walden Lane, Lanham, Maryland 20706-4884, ("Borrower"), hereby unconditionally promises to pay to the order of **BEAR STEARNS COMMERCIAL MORTGAGE, INC.**, a New York corporation, as payee, having an address at 383 Madison Avenue, New York, New York 10179 ("Lender"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of FIFTEEN MILLION AND 00/100 DOLLARS ($15,000,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the Applicable Interest Rate (defined below), and to be paid in installments as follows:

### ARTICLE I     PAYMENT TERMS

(a) Unless this Note is dated the first day of a month, a payment on the date hereof on account of all interest that will accrue on the principal amount of this Note from and after the date hereof through and including the last day of the present month (the "Month-End Date");

(b) Beginning on the first day of April, 2007 and on the first day of each calendar month thereafter up to and including the first day of February, 2017, a constant payment of $97,914.50 (also a "Monthly Payment") (each such date being hereinafter referred to as a "Monthly Payment Date"). Each Monthly Payment shall be applied as follows:

    (i) first, to the payment of interest which has accrued during the preceding calendar month computed at the Applicable Interest Rate; and

    (ii) the balance toward the reduction of the principal sum;

The balance of the principal sum and all interest thereon shall be due and payable on the first day of March, 2017 (the "Maturity Date"). Interest on the principal sum of this Note shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a 360-day year.

### ARTICLE II     INTEREST

The term "Applicable Interest Rate" as used in the Security Instrument (defined below) and this Note shall mean an interest rate equal to six and 138/1,000 percent (6.138%) per annum.

### ARTICLE III     DEFAULT AND ACCELERATION

(a) The whole of the principal sum of this Note, (b) interest, default interest, late charges and other sums, as provided in this Note, the Security Instrument or the Other Security Documents (defined below), (c) all other monies agreed or provided to be paid by Borrower in this Note, the Security

Instrument or the Other Security Documents, (d) all sums advanced pursuant to the Security Instrument to protect and preserve the Property (defined below) and the lien and the security interest created thereby, and (e) all sums advanced and costs and expenses incurred by Lender in connection with the Debt (defined below) or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender (all the sums referred to in (a) through (e) above shall collectively be referred to as the "Debt") shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid within five (5) days of the date the same is due or on the Maturity Date or on the happening of any other default, after the expiration of any applicable notice and grace periods, herein or under the terms of the Security Instrument or any of the Other Security Documents (collectively, an "Event of Default").

### ARTICLE IV    DEFAULT INTEREST

Borrower does hereby agree that upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a rate equal to the lesser of (a) five percent (5%) plus the Applicable Interest Rate and (b) the maximum interest rate which Borrower may by law pay (the "Default Rate"). The Default Rate shall be computed from the occurrence of the Event of Default until the earlier of the date upon which the Event of Default is cured or the date upon which the Debt is paid in full. Interest calculated at the Default Rate shall be added to the Debt, and shall be deemed secured by the Security Instrument. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

### ARTICLE V    PREPAYMENT; DEFEASANCE

Except as otherwise provided herein, Borrower shall not have the right or privilege to prepay all or any portion of the unpaid principal balance of this Note.

Following the earlier to occur of (i) the date which is two (2) years after the occurrence of a Secondary Market Transaction (as defined in the Security Instrument) or (ii) the fourth (4th) anniversary of the Month-End Date, Borrower may obtain a release of the Property (as hereinafter defined) from the lien of the Security Instrument and the Other Security Documents provided that the following conditions have been satisfied:

(i) Borrower shall have provided not less than 30 and not more than 60 days prior written notice (the "Defeasance Notice") to Lender specifying the scheduled date on which the Defeasance Collateral (as hereinafter defined) is to be delivered in the manner hereinafter provided (the "Release Date");

(ii) No Event of Default shall have occurred;

(iii) Borrower shall have delivered to Lender on or before the Release Date:

(a) U.S. Government Securities (defined below) that provide for payments prior, but as close as possible, to all successive Monthly Payment Dates occurring after the Release Date and the Maturity Date, with each such payment being equal to or greater than the amount of the corresponding Monthly Payment required to be

850500541|ORIG NOTE|2007-10-23

paid under this Note for the balance of the term hereof and the amount required to be paid on the Maturity Date (the "Defeasance Collateral"), each of which shall be duly endorsed by the holder thereof as directed by Lender or accompanied by a written instrument of transfer in form and substance wholly satisfactory to Lender (including, without limitation, such instrument as may be required by the depository institution holding such securities or the issuer thereof, as the case may be, to effectuate book-entry transfers and pledges through the book-entry facilities of such institution) in order to perfect upon the delivery of the Defeasance Security Agreement (as hereinafter defined) the first priority security interest therein in favor of the Lender in conformity with all applicable state and federal laws governing the granting of such security interests. The Defeasance Collateral may be purchased by Lender on Borrower's behalf, in which case Borrower shall deposit with Lender on the Release Date a sum sufficient to purchase the Defeasance Collateral. For the purposes hereof, "U.S. Government Securities" shall mean non-redeemable securities evidencing an obligation to timely pay principal and/or interest in a full and timely manner that are (a) direct obligations of the United States of America for the payment of which its full faith and credit is pledged, or (b) to the extent acceptable to the Rating Agencies, other "government securities" within the meaning of Section 2(a)(16) of the Investment Company Act of 1940, as amended.

(b) a pledge and security agreement, in form and substance satisfactory to Lender in its sole discretion, creating a first priority security interest in favor of Lender in the Defeasance Collateral (the "Defeasance Security Agreement"), which shall provide, among other things, that any excess received by Lender from the Defeasance Collateral over the amount payable by Borrower hereunder shall be refunded to Borrower promptly following each Monthly Payment Date and the Maturity Date;

(c) a certificate by an independent certified public accountant acceptable to Lender certifying that all of the requirements set forth in paragraphs (a) and (b) above have been fully satisfied;

(d) an opinion in form and from a counsel acceptable to Lender in all respects that Lender has received a perfected first priority security interest in the Defeasance Collateral and that the substitution of the Defeasance Collateral for the Property will not adversely affect the status of the holder of this Note as a REMIC under the Code; and

(e) such other certificates, documents or instruments as Lender may reasonably require;

(iv) all accrued and unpaid interest and all other sums due under this Note, the Security Instrument and other Security Documents up to the Release Date, including, without limitation, all costs and expenses incurred by Lender or its agents pursuant to this Article 5 in connection with such release (including, without limitation, the review of the proposed Defeasance Collateral and the preparation or review of the Defeasance Security Agreement and the related documentation and opinions, and the cost of obtaining the written confirmation of the rating agencies), shall have been fully paid on or before the Release Date; and

850500541|ORIG NOTE|2007-10-23

(v) Lender shall have received written confirmation from the rating agencies that have rated the Securities (as defined in the Security Instrument) that such substitution of Defeasance Collateral will not result in a downgrade, withdrawal or qualification of the ratings then assigned to any of the Securities.

Upon compliance with the foregoing requirements relating to the delivery of the Defeasance Collateral, the Property shall be released from the lien of the Security Instrument and the Other Security Documents and the Defeasance Collateral shall constitute collateral which shall secure this Note and the Debt. Lender will, at Borrower's expense, execute and deliver any agreements reasonably requested by Borrower to release the lien of the Security Instrument from the Property.

In addition to the foregoing, Lender shall have the right in connection with the Borrower's exercise of its rights under this Article 5 to require an entity designated by Lender to acquire the Defeasance Collateral and to assume that portion of the obligations of Borrower which is secured by such Defeasance Collateral, in which event Borrower shall thereafter be released from such obligations.

Following an Event of Default and acceleration of this Note, if Borrower or anyone on Borrower's behalf makes a tender of payment of the amount necessary to satisfy the indebtedness evidenced by this Note and secured by the Security Instrument at any time prior to foreclosure sale (including, but not limited to, sale under power of sale under the Security Instrument), or during any redemption period after foreclosure, the tender of payment shall constitute an evasion of the prepayment prohibition contained in this Article 5 and shall, therefore, to the maximum extent permitted by law, include an amount equal to the greater of (i) three percent (3%) of the then principal amount of this Note and (ii) an amount equal to the excess of (A) the sum of the present values of a series of payments payable at the times and in the amounts equal to the payments of principal and interest (including, but not limited to the principal and interest payable on the Maturity Date) which would have been scheduled to be payable after the date of such tender under this Note had this Note not been accelerated, with each such payment discounted to its present value at the date of such tender at the rate which when compounded monthly is equivalent to the Prepayment Rate (as hereinafter defined), over (B) the then principal amount of this Note.

The term "Prepayment Rate" means the bond equivalent yield (in the secondary market) on the United States Treasury Security that as of the Prepayment Rate Determination Date (hereinafter defined) has a remaining term to maturity closest to, but not exceeding, the remaining term to the Maturity Date, as most recently published in the "Treasury Bonds, Notes and Bills" section in The Wall Street Journal as of the date of the related tender of payment. If more than one issue of United States Treasury Securities has the remaining term to the Maturity Date referred to above, the "Prepayment Rate" shall be the yield on the United States Treasury Security most recently issued as of such date. The term "Prepayment Rate Determination Date" shall mean the date which is five (5) Business Days prior to the prepayment date. The rate so published shall control absent manifest error. As used herein, "Business Day" shall mean any day other than Saturday, Sunday or any other day on which banks are required or authorized to close in New York, New York.

If the publication of the Prepayment Rate in The Wall Street Journal is discontinued, Lender shall determine the Prepayment Rate on the basis of "Statistical Release H.15 (519), Selected Interest Rates," or any successor publication, published by the Board of Governors of the Federal Reserve System, or on the basis of such other publication or statistical guide as Lender may reasonably select.

850500541|ORIG NOTE|2007-10-23

### ARTICLE VI  SECURITY

This Note is secured by the Security Instrument and the Other Security Documents. The term "Security Instrument" shall mean, collectively, (i) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (191 South Larkin Avenue, Joliet, Illinois), (ii) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (10280 South Harlem Avenue, Bridgeview, Illinois) and (iii) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (55 South Constitution Drive, Aurora, Illinois) each dated as of the date hereof in the aggregate principal sum of FIFTEEN MILLION AND 00/100 DOLLARS ($15,000,000.00) given by Borrower to (or for the benefit of) Mortgage Electronic Registration Systems, Inc., a Delaware stock corporation, as Lender's nominee ("MERS"), having an address at 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182, as security for the Debt (hereinafter defined) and other obligations covering the fee simple estates of Borrower in certain premises located in Will County, Cook County and Kane County, State of Illinois, respectively and other property, as more particularly described therein (collectively, the "Property") and intended to be duly recorded in said Counties. The term "Other Security Documents" as used in this Note shall mean all and any of the documents other than this Note or the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender or MERS, which wholly or partially secure or guarantee payment of this Note. All of the terms, covenants and conditions contained in the Security Instrument and the Other Security Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. All capitalized terms not defined herein shall have the meanings ascribed to them in the Security Instrument and the Other Security Documents.

### ARTICLE VII  SAVINGS CLAUSE

This Note is subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Debt, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Note until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Debt for so long as the Debt is outstanding.

### ARTICLE VIII  LATE CHARGE

If any sum payable under this Note is not paid prior to the fifth (5th) day after the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of the unpaid sum or the maximum amount permitted by applicable law to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment and the amount shall be secured by the Security Instrument and the Other Security Documents.

850500541|ORIG NOTE|2007-10-23

### ARTICLE IX   NO ORAL CHANGE

This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### ARTICLE X   JOINT AND SEVERAL LIABILITY

If Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several.

### ARTICLE XI   WAIVERS

Borrower and all others who may become liable for the payment of all or any part of the Debt do hereby severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind, except as required in this Note, the Security Instruments and the Other Security Documents. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Security Instrument or the Other Security Documents made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note, the Security Instrument or the Other Security Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Security Instrument or the Other Security Documents. If Borrower is a partnership, the agreements herein contained shall remain in force and applicable, notwithstanding any changes in the individuals comprising the partnership. If Borrower is a corporation, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation. If Borrower is a limited liability company, the agreements contained herein shall remain in full force and applicable notwithstanding any changes in the members comprising, or the managers, officers or agents relating to, the limited liability company. The term "Borrower", as used herein, shall include any alternate or successor partnership, corporation, limited liability company or other entity or person to the Borrower named herein, but any predecessor partnership (and their partners), corporation, limited liability company, other entity or person shall not thereby be released from any liability. Nothing in this Article 11 shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, corporation, or limited liability company which may be set forth in the Security Instrument or any Other Security Document.

### ARTICLE XII   TRANSFER

Lender may, at any time, sell, transfer or assign this Note, the Security Instrument and the Other Security Documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage passthrough certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). Lender may forward to each purchaser, transferee, assignee, servicer, participant, investor in such Securities or any Rating Agency rating such

850500541|ORIG NOTE|2007-10-23

Securities (collectively, the "Investor") and each prospective Investor, all documents and information which Lender now has or may hereafter acquire relating to the Debt and to Borrower, any guarantor and the Property, whether furnished by Borrower, any guarantor or otherwise, as Lender determines necessary or desirable. Borrower and any guarantor agree to cooperate with Lender in connection with any transfer made or any Securities created pursuant to the Security Instrument, including, without limitation, the delivery of an estoppel certificate in accordance therewith, and such other documents as may be reasonably requested by Lender. Borrower shall also furnish and Borrower and any guarantor consent to Lender furnishing to such Investors or such prospective Investors any and all information concerning the Property, the Leases, the financial condition of Borrower and any guarantor as may be requested by Lender, any Investor or any prospective Investor in connection with any sale, transfer or participation interest. Lender may retain or assign responsibility for servicing the Loan, including this Note, the Security Instrument, and the Other Security Documents, or may delegate some or all of such responsibility and/or obligations to a servicer including, but not limited to, any subservicer or master servicer. Lender may make such assignment or delegation on behalf of the Investors if this Note is sold or the Security Instrument or the Other Security Documents are assigned. All references to Lender herein shall refer to and include any such servicer to the extent applicable.

### ARTICLE XIII WAIVER OF TRIAL BY JURY

**BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THIS NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.**

### ARTICLE XIV EXCULPATION

Except as otherwise provided herein, in the Security Instrument or in the Other Security Documents, Lender shall not enforce the liability and obligation of Borrower, to perform and observe the obligations contained in this Note, the Security Instrument or the Other Security Documents by any action or proceeding wherein a money judgment shall be sought against Borrower or any partner or member of Borrower, except that Lender may bring a foreclosure action, an action for specific performance or any other appropriate action or proceeding to enable Lender to enforce and realize upon this Note, the Security Instrument, the Other Security Documents, and the interests in the Property; and any other collateral given to Lender pursuant to the Security Instrument and the Other Security Documents; provided, however, that, except as specifically provided herein, any judgment in any such action or proceeding shall be enforceable against Borrower or any partner or member of Borrower only to the extent of Borrower's interest in the Property and in any other collateral given to Lender, and Lender, by accepting this Note, the Security Instrument and the Other Security Documents, agrees that it shall not sue for, seek or demand any deficiency judgment against Borrower or any partner or member of Borrower, in any such action or proceeding, under or by reason of or in connection with this Note, the Security Instrument or the Other Security Documents. The provisions of this paragraph shall not, however, (i) constitute a waiver, release or impairment of any obligation evidenced or secured by the Security Instrument or the Other Security Documents; (ii) impair the right of Lender to name Borrower as a party defendant in any action or suit for foreclosure and sale under the Security Instrument; (iii) affect the

850500541|ORIG NOTE|2007-10-23

validity or enforceability of any guaranty made in connection with this Note, the Security Instrument or the Other Security Documents; (iv) impair the right of Lender to obtain the appointment of a receiver; (v) impair the enforcement of any assignment; or (vi) constitute a waiver of the right of Lender to enforce the liability and obligation of Borrower or any partner or general partner of Borrower, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with the following:

(a) fraud or misrepresentation by Borrower in connection with this Note, the Security Instrument or the Other Security Documents;

(b) the gross negligence or willful misconduct of Borrower;

(c) material physical waste of the Property;

(d) the breach of provisions in this Note, the Security Instrument or the Other Security Documents concerning Environmental Laws and Hazardous Substances and any indemnification of Lender with respect thereto in any document;

(e) the removal or disposal of any portion of the Property after default under this Note, the Security Instrument or the Other Security Documents;

(f) the misapplication or conversion by Borrower of (i) any insurance proceeds paid by reason of any loss, damage or destruction to the Property, (ii) any awards or other amounts received in connection with the condemnation of all or a portion of the Property, or (iii) any Rents following default under this Note, the Security Instrument or the Other Security Documents;

(g) failure to pay Taxes (provided that the liability of Borrower shall be only for amounts in excess of the amount held by Lender in escrow for the payment of Taxes), assessments, charges for labor or materials or other charges that can create liens on any portion of the Property; and

(h) any security deposits collected with respect to the Property which are not delivered to Lender upon a foreclosure of the Property or action in lieu thereof, except to the extent any such security deposits were applied in accordance with the terms and conditions of any of the Leases prior to the occurrence of the Event of Default that gave rise to such foreclosure or action in lieu thereof.

Notwithstanding anything to the contrary in this Note, the Security Instrument or the Other Security Documents (i) the Debt shall be fully recourse to Borrower; and (ii) Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt or to require that all collateral shall continue to secure all of the Debt owing to Lender in accordance with this Note, the Security Instrument or the Other Security Documents, in the event that: (A) the first full Monthly Payment is not paid when due; (B) Borrower fails to permit on-site inspections of the Property, fails to provide financial information, or fails to comply with the terms of Section 4.3 of the Security Instrument; (C) Borrower fails to obtain Lender's prior written consent to any subordinate financing or other voluntary lien encumbering the Property; (D) Borrower fails to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Property or any interest therein as required by the Security Instrument.

1 126662985v6 6/7/2007         8

850500541|ORIG NOTE|2007-10-23

### ARTICLE XV   AUTHORITY

Borrower (and the undersigned representative of Borrower, if any) represents that Borrower has full power, authority and legal right to execute and deliver this Note, the Security Instrument and the Other Security Documents and that this Note, the Security Instrument and the Other Security Documents constitute valid and binding obligations of Borrower.

### ARTICLE XVI   APPLICABLE LAW

This Note shall be deemed to be a contract entered into pursuant to the laws of the State of New York and shall in all respects be governed, construed, applied and enforced in accordance with the laws of the State of New York.

### ARTICLE XVII SERVICE OF PROCESS

(a)   Borrower will maintain a place of business or an agent for service of process in the State of Illinois and give prompt notice to Lender of the address of such place of business and of the name and address of any new agent appointed by it, as appropriate. Borrower further agrees that the failure of its agent for service of process to give it notice of any service of process will not impair or affect the validity of such service or of any judgment based thereon. If, despite the foregoing, there is for any reason no agent for service of process of Borrower available to be served, and if it at that time has no place of business in the State of Illinois then Borrower irrevocably consents to service of process by registered or certified mail, postage prepaid, to it at its address given in or pursuant to the first paragraph hereof.

(b)   Borrower initially and irrevocably designates Michael D. Burstein, with offices on the date hereof at c/o Much Shelist, 191 North Wacker Drive, Suite 1800, Chicago, Illinois 60606-1615, to receive for and on behalf of Borrower service of process in the State of Illinois with respect to this Note.

### ARTICLE XVIII   COUNSEL FEES

In the event that it should become necessary to employ counsel to collect the Debt or to protect or foreclose the security therefor, Borrower also agrees to pay all reasonable fees and expenses of Lender, including, without limitation, reasonable attorney's fees for the services of such counsel whether or not suit be brought.

### ARTICLE XIX   NOTICES

All notices or other written communications to Borrower, Lender or MERS hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (ii) one (1) Business Day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to Borrower, Lender or MERS at their addresses set forth in the Security Instrument or addressed as such party may from time to time designate by written notice to the other parties. Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

## ARTICLE XX  MISCELLANEOUS

(a)     Wherever pursuant to this Note (i) Lender exercises any right given to it to approve or disapprove, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole and absolute discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

(b)     Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees and disbursements of Lender reasonably incurred, whether retained firms, the reimbursement for the expenses of in-house staff, or otherwise.

(c)     Whenever used, the singular number shall include the plural, the plural number shall include the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, executors and administrators.

## ARTICLE XXI  DEFINITIONS

All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Security Instrument.

## ARTICLE XXII  HYPER-AMORTIZATION

(a)     Lender shall have the right, at Lender's option, at any time prior to the occurrence of a Secondary Market Transaction, to convert the Debt to a hyper-amortization loan with a twenty five (25) year term (consisting of a ten (10) year initial term ("Initial Term") and a fifteen (15) year extended term (the "Extended Term")). During the Extended Term, the Debt shall bear interest at a rate per annum (the "Extended Rate") to be determined by Lender equal to two hundred (200) basis points in excess of the greater of (i) the Applicable Interest Rate and (ii) the 10-Year Treasury Yield (as hereafter defined) provided, however, that in no event shall the Extended Rate exceed five hundred (500) basis points in excess of the Applicable Interest Rate. As used herein, the 10-Year Treasury Yield means the yield, calculated by linear interpolation (rounded to three decimal places), of the yields of United States Treasury Constant Maturities with the terms (one longer and one shorter) most nearly approximating those of U.S. Obligations having maturities as close as possible to the date of the commencement of the Extended Term, as determined by Lender on the basis of Federal Reserve Statistical Release H.15-Selected Interest Rates under the heading U.S. Governmental Security/Treasury Constant Maturities, or other recognized source of financial market information selected by the Lender on the last Business Day of the week immediately prior to the commencement of the Extended Term. Notwithstanding the above, the 10-Year Treasury Yield shall not be deemed to be less than 6.15%.

(b)     During the Extended Term, all Rents (as defined in the Security Instrument) shall be paid directly by the parties paying such Rents (including, without limitation, tenants under the Leases (as defined in the Security Instrument)) to a designated cash management account (the "Cash Management Account"), opened by Lender at a bank selected by Lender. The Cash Management Account and all sums deposited therein shall be within the exclusive control of Lender.

850500541|ORIG NOTE|2007-10-23

(c) All amounts received in the Cash Management Account in excess of the amount necessary to pay the Monthly Payment shall be applied by Lender in the following order of priority: (i) to the payment of required payments to be made in accordance with the Security Instrument and the Replacement Reserve, Leasing Reserve and Security Agreement of even date herewith between Lender and Borrower; (ii) payments of operating expenses with respect to the Property in accordance with an annual operating budget reasonably approved by Lender or its designee; and (iii) amortization of the principal amount of the Debt and payment of accrued interest and interest thereon in such order or priority as Lender may determine. All accrued interest not paid on a Monthly Payment date during the Extended Term shall bear interest at the Extended Rate.

(d) Prior to the commencement of the Extended Term, Borrower shall execute an Amended and Restated Promissory Note setting forth the foregoing provisions, among other provisions, on terms acceptable to Lender.

(e) Notwithstanding anything to the contrary contained herein, provided no Event of Default is then continuing, Borrower may prepay the Loan in full during the Extended Term without penalty or premium.

[remainder of page intentionally left blank; signature page follows]

850500541|ORIG NOTE|2007-10-23

[SIGNATURE PAGE TO PROMISSORY NOTE]

**IN WITNESS WHEREOF**, Borrower has duly executed this Note as of the day and year first above written.

        **BORROWER:**

        **MS-GRAND HOLDINGS ILLINOIS, LLC,**
        an Illinois limited liability company

        By: **MS-GRAND INVESTMENT, LLC,**
           an Illinois limited liability company,
           its Manager

        By: _____
             Min Sik Kang, its Managing Member

850500541|ORIG NOTE|2007-10-23

## ACKNOWLEDGMENT

STATE OF _VIRGINIA_ )
                          ) ss:
COUNTY OF _FAIRFAX_ )

    The undersigned, a Notary Public in and for the said County, in the State aforesaid, DO HEREBY CERTIFY that Min Sik Kang, the Managing Member of MS-Grand Investment, LLC, an Illinois limited liability company, which is in turn the Manager of MS-Grand Holdings Illinois, LLC, an Illinois limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Managing Member, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said limited liability companies, on behalf of said limited liability companies, for the uses and purposes therein set forth.

    GIVEN under my hand and notarial seal this _27_ day of February, 2007.

                                                        Notary Public

                                                        My Commission Expires: _2/28/09_

[Notary seal: GEORGE A.R. AREVALO, COMMONWEALTH OF VIRGINIA, NOTARY PUBLIC]