850500541|ASSGN OF LEASES-RENTS|2007-08-27

---

**MERS MIN: 8000101-0000004416-3**

MS-GRAND HOLDINGS ILLINOIS, LLC, as assignor
(Borrower)

to

MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., as assignee
(Assignee)

ASSIGNMENT OF
LEASES AND RENTS

Dated:          February 28, 2007

Location:    55 South Constitution Drive, Aurora, Illinois
County:      Kane County

UPON RECORDATION
RETURN TO:

Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Attention: David Fairman

---

¶ 126657629v5 2/26/2007

**THIS ASSIGNMENT OF LEASES AND RENTS** ("Assignment") made as of the 28th day of February, 2007, by **MS-GRAND HOLDINGS ILLINOIS, LLC**, an Illinois limited liability company, as assignor, having its principal place of business at 4800 Walden Lane, Lanham, Maryland 20706-4884 ("Borrower") to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, a Delaware stock corporation, having an address at 1595 Spring Hill Road, Vienna, Virginia, as assignee and Lender's nominee ("Assignee").

## RECITALS:

Borrower by its promissory note of even date herewith given to Bear Stearns Commercial Mortgage, Inc., a New York corporation, having an address at 383 Madison Avenue, New York, New York 10179 (together with its successors and assigns, "Lender") is indebted to Lender in the principal sum of FIFTEEN MILLION AND 00/100 DOLLARS ($15,000,000.00) in lawful money of the United States of America (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"), with interest from the date thereof at the rates set forth in the Note, principal and interest to be payable in accordance with the terms and conditions provided in the Note.

Borrower desires to secure the payment of the Debt (defined below) and the performance of all its obligations under the Note and the Other Obligations as defined in Article 2 of the Security Instrument (defined below) covering the fee simple estates of Borrower in certain premises located in Will County, Cook County and Kane County, State of Illinois, and other property as more particularly described therein (collectively, the "Properties").

## ARTICLE 1 - ASSIGNMENT

Section 1.1    PROPERTY ASSIGNED□    Borrower hereby absolutely and unconditionally assigns and grants to Assignee the following property, rights, interests and estates, now owned, or hereafter acquired by Borrower:

(a)    Leases□ All existing and future leases affecting the use, enjoyment, or occupancy of all or any part of that certain lot or piece of land, more particularly described in Exhibit A annexed hereto and made a part hereof, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (collectively, the "Property") and the right, title and interest of Borrower, its successors and assigns, therein and thereunder.

(b)    Other Leases and Agreements□ All other leases and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made, together with any extension, renewal or replacement of the same, this Assignment of other present and future leases and present and future agreements being effective without further or supplemental assignment. The leases described in Subsection 1.1(a) and the leases and other agreements described in this Subsection 1.1(b), together with all other present and future leases and present and future agreements and any extension or renewal of the same are collectively referred to as the "Leases".

(c)    Rents□ All rents, additional rents, revenues, income, issues and profits arising from the Leases and renewals and replacements thereof and any cash or security

deposited in connection therewith and together with all rents, revenues, income, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the use, enjoyment and occupancy of the Property (collectively, the "Rents").

(d)     Bankruptcy Claims☐ All of Borrower's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code, 11 U.S.C. 101 et seq., as the same may be amended (the "Bankruptcy Code").

(e)     Lease Guaranties☐ All of Borrower's right, title and interest in and to claims under any and all lease guaranties, letters of credit and any other credit support given by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", collectively, the "Lease Guarantors") to Borrower (individually, a "Lease Guaranty", collectively, the "Lease Guaranties").

(f)     Proceeds☐ All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(g)     Other☐ All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation, the immediate and continuing right to make claims for, receive, collect and receipt for, all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

(h)     Entry☐ The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents.

(i)     Power of Attorney☐ Borrower's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(j)     Other Rights and Agreements☐ Any and all other rights of Borrower in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

Section 1.2     CONSIDERATION☐ This Assignment is made in consideration of that certain loan made by Lender to Borrower evidenced by the Note and secured by those certain mortgages and security agreements, deeds of trust and security agreements, deeds to secure debt and security agreements or similar real estate security instruments given by Borrower to or for the benefit of Assignee, dated the date hereof, in the principal amount of the Note, covering the Property and intended to be duly recorded (individually and collectively referred to herein as the "Security Instrument"). The principal sum, interest and all other sums due and payable under the Note, the Security Instrument, this Assignment and the Other Security Documents (defined below) are collectively referred to as the "Debt". The documents other than this Assignment, the

850500541|ASSGN OF LEASES-RENTS|2007-08-27

Note or the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender which wholly or partially secure or guarantee payment of the Debt are referred to herein as the "Other Security Documents".

Section 1.3    GRANTS TO ASSIGNEE☐This Assignment and the grants, assignments and transfers made to Assignee in this Article 1 shall inure to Assignee solely in its capacity as Lender's nominee.

## ARTICLE 2 - TERMS OF ASSIGNMENT

Section 2.1    PRESENT ASSIGNMENT AND LICENSE BACK☐ It is intended by Borrower that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 2.1, Lender grants to Borrower a revocable license to collect and receive the Rents and other sums due under the Lease Guaranties and Bankruptcy Claims. Borrower shall hold the Rents and all sums received pursuant to any Lease Guaranty or Bankruptcy Claim, or a portion thereof sufficient to discharge all current sums due on the Debt, in trust for the benefit of Lender for use in the payment of such sums.

Section 2.2    NOTICE TO LESSEES☐ Borrower hereby agrees to authorize and direct the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of the Security Instrument and that a Default (defined below) exists, and to continue so to do until otherwise notified by Lender.

Section 2.3    INCORPORATION BY REFERENCE☐ All representations, warranties, covenants, conditions and agreements contained in the Security Instrument as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

## ARTICLE 3 - REMEDIES

Section 3.1    REMEDIES OF LENDER☐Upon or at any time after the occurrence of a default under this Assignment beyond applicable notice and cure periods or an Event of Default (as defined in the Security Instrument) (a "Default"), the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Property. In addition, Lender, or Assignee acting on behalf of and at the sole discretion of Lender in its capacity as Lender's nominee, may, at its option, without waiving such Default, without notice and without regard to the adequacy of the security for the Debt, either in person or by agent, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, but in any event in accordance with applicable law, dispossess Borrower and its agents and servants from the Property, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of the Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for

3

850500541|ASSGN OF LEASES-RENTS|2007-08-27

such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender and may apply the Rents and sums received pursuant to any Lease Guaranties to the payment of the following in accordance with the Illinois Mortgage Foreclosure Law (chapter 735, Sections 5/115-1101 et seq., Illinois Compiled Statues) and, unless otherwise specified in such act, in such order as the Lender shall elect in its sole and absolute discretion: (a) all expenses of managing and securing the Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable and all expenses of operating and maintaining the Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may deem necessary or desirable, and the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property; and (b) the Debt, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence of a Default, Lender at its option, may (1) complete any construction on the Property in such manner and form as Lender deems advisable, (2) exercise all rights and powers of Borrower, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums due under any Lease Guaranties, (3) either require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Borrower or (4) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

Section 3.2    OTHER REMEDIES□ Nothing contained in this Assignment and no act done or omitted by Lender or Assignee pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower under this Assignment, the Note, the Security Instrument, the Other Security Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Note, the Security Instrument, or any of the Other Security Documents (provided, however, that the foregoing shall not be deemed a waiver of Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

*LA 12665762[9]v5 2/26/2007*

Section 3.3    OTHER SECURITY□ Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

Section 3.4    NON-WAIVER□ The exercise by Lender of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and sums due under the Lease Guaranties and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the Other Security Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

Section 3.5    BANKRUPTCY□ (a) Upon or at any time after the occurrence of a Default beyond applicable notice and cure periods, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)    If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

LA 126657629v5 2/26/2007

## ARTICLE 4 - NO LIABILITY, FURTHER ASSURANCES

Section 4.1     NO LIABILITY OF LENDER☐This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after a Default or from any other act or omission of Lender in managing the Property after a Default unless such loss is caused by the willful misconduct and bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees, to indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the Other Security Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Substances (as defined in the Security Instrument), or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 4.2     NO MORTGAGEE IN POSSESSION☐Nothing herein contained shall be construed as constituting Lender or Assignee a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

Section 4.3     FURTHER ASSURANCES☐Borrower will, at the cost of Borrower, and without expense to Lender, duly execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

6

## ARTICLE 5 - SECONDARY MARKET

Section 5.1    TRANSFER OF LOAN□Lender may, at any time, sell, transfer or assign the Note, the Security Instrument, this Assignment and the Other Security Documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). Lender may forward to each purchaser, transferee, assignee, servicer, participant or investor in such Securities or any credit rating agency rating such Securities (collectively, the "Investor") and each prospective Investor, all documents and information which Lender now has or may hereafter acquire relating to the Debt and to Borrower and the Property, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable. Borrower agrees to cooperate with Lender in connection with any transfer made or any Securities created pursuant to this Section, including, without limitation, the delivery of an estoppel certificate required in accordance with Subsection 7.4(c) of the Security Instrument and such other documents as may be reasonably requested by Lender. Borrower shall also furnish and Borrower consents to Lender furnishing to such Investors or such prospective Investors any and all information concerning the Property, the Leases, the financial condition of Borrower as may be requested by Lender, any Investor or any prospective Investors or credit rating agency in connection with any sale, transfer or participation interest. Lender may retain or assign responsibility for servicing the Note, this Assignment, the Security Instrument and the Other Security Documents or may delegate some or all of such responsibility and/or obligations to a servicer including, but not limited to, any servicer or master servicer. Lender may make such assignment or delegation on behalf of the Investors if the Note is sold or this Assignment, the Security Instrument or the Other Security Documents are assigned. All references to Lender herein shall refer to and include any such servicer to the extent applicable.

## ARTICLE 6 - MISCELLANEOUS PROVISIONS

Section 6.1    CONFLICT OF TERMS□In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

Section 6.2    NO ORAL CHANGE□ This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower, Lender or Assignee, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 6.3    CERTAIN DEFINITIONS□Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, limited liability corporation, partnership, limited liability partnership, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any

7

portion of the Property and any interest therein, the phrases "attorneys' fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Security Instrument and all other sums due pursuant to the Note, the Security Instrument, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. Any term not expressly defined herein shall have the meaning ascribed to such term in the Security Instrument unless the context clearly indicates otherwise.

Section 6.4    AUTHORITY□ Borrower represents and warrants that it has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

Section 6.5    INAPPLICABLE PROVISIONS□ If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

Section 6.6    DUPLICATE ORIGINALS; COUNTERPARTS□ This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original. This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder. Assignor hereby acknowledges receipt of a true and complete copy of this Assignment.

Section 6.7    CHOICE OF LAW□THIS ASSIGNMENT SHALL BE DEEMED TO BE A CONTRACT ENTERED INTO PURSUANT TO THE LAWS OF THE STATE OF NEW YORK AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, PROVIDED, HOWEVER, THAT WITH RESPECT TO THE CREATION, PERFECTION, PRIORITY AND ENFORCEMENT OF THE LIEN OF THIS ASSIGNMENT, THE LAWS OF THE STATE WHERE THE PROPERTY IS LOCATED SHALL APPLY.

Section 6.8    TERMINATION OF ASSIGNMENT□ Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Lender, this Assignment shall become and be void and of no effect.

Section 6.9    NOTICES□ All notices or other written communications to Borrower, Lender or Assignee hereunder shall be deemed to have been properly given (i) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (ii) one (1) Business Day (hereinafter defined) after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) three (3) Business Days after having been deposited in any post

8

office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to Borrower, Lender or Assignee at their addresses set forth in the Security Instrument or addressed as such party may from time to time designate by written notice to the other parties. For purposes of this Assignment, the term "Business Day" shall mean any day other than Saturday, Sunday or any other day on which banks are required or authorized to close in New York, New York. Either party by notice to the other may designate additional or different addresses for subsequent notices or communications.

Section 6.10   WAIVER OF TRIAL BY JURY□BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

Section 6.11   REFERENCES TO LENDER□ Notwithstanding anything to the contrary contained herein or in any of the Other Security Documents, all references herein and in any of the Other Security Documents to "Lender" shall be deemed to collectively or individually (as the context requires) refer to Lender or to Assignee, acting on behalf of and at the sole direction of Lender in its capacity as Lender's nominee, as each of their interests may appear; provided, that, unless Lender, in its sole discretion, shall determine otherwise, only Lender (and not Assignee) shall be deemed to be "Lender" with respect to (a) any consent or similar approval right granted to Lender hereunder or under any of the Other Security Documents (including, without limitation, any consent or similar approval right that is deemed granted if not approved or denied within a specified time period), (b) any items, documents or other information required to be delivered to Lender hereunder or under any of the Other Security Documents (other than notices expressly required to be sent to Assignee) or (c) any future funding or other obligations of Lender to Borrower or any affiliate of Borrower hereunder or under any of the Other Security Documents, if any.

Section 6.12   LIABILITY□ If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

Section 6.13   HEADINGS, ETC□ The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 6.14   NUMBER AND GENDER□ Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 6.15   SOLE DISCRETION OF LENDER☐  Wherever pursuant to this Assignment (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole and absolute discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

Section 6.16   COSTS AND EXPENSES OF BORROWER☐ Wherever pursuant to this Assignment it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees and disbursements of Lender, whether retained firms, the reimbursement of the expenses for in-house staff or otherwise.

Section 6.17   EXCULPATION☐  Borrower's obligations under this Assignment are subject to the provisions of Article 15 of the Security Instrument, and such provisions are incorporated herein by reference.

**THIS ASSIGNMENT**, together with the covenants and warranties therein contained, shall inure to the benefit of Lender and any subsequent holder of the Security Instrument and shall be binding upon Borrower, its heirs, executors, administrators, successors and assigns and any subsequent owner of the Property.

[remainder of page intentionally left blank; signature page follows]

850500541|ASSGN OF LEASES-RENTS|2007-08-27

[SIGNATURE PAGE TO ASSIGNMENT OF LEASES AND RENTS]

**IN WITNESS WHEREOF,** Borrower has executed this instrument the day and year first above written.

**BORROWER:**

**MS-GRAND HOLDINGS ILLINOIS, LLC,**
an Illinois limited liability company

By: **MS-GRAND INVESTMENT, LLC,**
    an Illinois limited liability company,
    its Manager


By: _____
    Min Sik Kang, its Managing Member

LA 12665762v5 2/26/2007

850500541|ASSGN OF LEASES-RENTS|2007-08-27

### ACKNOWLEDGMENT

STATE OF _____)
                        ) ss:
COUNTY OF _____)

      The undersigned, a Notary Public in and for the said County, in the State aforesaid, DO HEREBY CERTIFY that Min Sik Kang, the Managing Member of MS-Grand Investment, LLC, an Illinois limited liability company, which is in turn the Manager of MS-Grand Holdings Illinois, LLC, an Illinois limited liability company, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Managing Member, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said limited liability companies, on behalf of said limited liability companies, for the uses and purposes therein set forth.

      GIVEN under my hand and notarial seal this _____ day of February, 2007.


                                    _____
                                          Notary Public

                                   My Commission Expires:

                                    _____

�₄ *126657629v5 2/26/2007*

850500541|ASSGN OF LEASES-RENTS|2007-08-27

## EXHIBIT A

[to be attached]

850500541|ASSGN OF LEASES-RENTS|2007-08-27

# LEASE AGREEMENT

This Commercial Lease Agreement ("Lease") is made and effective February 28, 2007, by and between MS GRAND HOLDINGS ILLINOIS, LLC, an Illinois limited liability company ("Landlord") and MS-GRAND AURORA, INC., an Illinois corporation ("Tenant").

Landlord is the owner of land and improvements commonly known and numbered as 55 S. Constitution Drive, Aurora, IL 60506 (the "Building"):

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

THEREFORE, in consideration of the mutual promises herein, contained and other good and valuable consideration, it is agreed:

## 1. Term.

Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning February 28, 2007 and ending February 28, 2032. Landlord shall use its best efforts to give Tenant possession as nearly as possible at the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall abate for the period of delay. Tenant shall make no other claim against Landlord for any such delay.

Tenant may renew the Lease for one extended term of Ten Years. Tenant shall exercise such renewal option, if at all, by giving written notice to Landlord not less than ninety (90) days prior to the expiration of the Initial Term. The renewal term shall be at the rental set forth below and otherwise upon the same covenants, conditions and provisions as provided in this Lease.

## 2. Rental.

Tenant shall pay to Landlord during the Initial Term rental of $704,704.00 per year, which is based on $11.00 per square foot of 64,064 rentable area) payable in installments of $58,725.33 per month. Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord at 4800 Walden Lane, Lanham, Maryland 20706-4884 or at such other place designated by written notice from Landlord or Tenant. The rental payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis. In addition to above base rent, Tenant shall pay all operating charges, real estate taxes, and all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord.

### 3. Use

Tenant shall use the Lease Premises only for the purpose of grocery and general merchandise sales in the State of Illinois. Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

Tenant shall pay timely any business, rent or other tax or fee that is now or hereafter assessed or imposed upon Tenant's use or occupancy of the Premises, the conduct of Tenant's business in the Premises or Tenant's fixtures, furnishings, inventory or personal property. If any such tax or fee is imposed upon Landlord or Landlord is responsible for collection or payment thereof, then Tenant shall pay to Landlord the amount of such tax or fee.

### 4. Sublease and Assignment.

Tenant shall not sublet or permit occupancy of (collectively "sublease") the Premises or part thereof, or assign or otherwise transfer (collectively "assign") this Lease or any of Tenant's rights or obligations, without Landlord's prior written consent, which consent may be granted or withheld in Landlord's absolute discretion. No assignment of this Lease may be effected by operation of law without Landlord's prior written consent. Any assignment or sublease, Landlord's consent thereto or Landlord's collection of rent from any assignee or subtenant shall not be construed as (a) a waiver or release of Tenant from liability hereunder, or (b) relieving Tenant, any assignee or subtenant from the obligation of obtaining Landlord's prior written consent to any other assignment or sublease. Tenant assigns to Landlord any amount due from any assignee or subtenant as security for performance of Tenant's obligations pursuant to this Lease. Tenant directs each such assignee or subtenant to pay such amount directly to Landlord if such assignee or subtenant receives written notice from Landlord specifying that Tenant is in default under this Lease and that such amount shall be paid directly to Landlord. Each assignee and subtenant shall pay as so directed. Landlord's collection of such amount shall not be construed as an acceptance of such assignee or subtenant as a tenant or as a permitted assignee or subtenant. Tenant's obligations pursuant to this Lease shall be deemed to extend to any subtenant or assignee. Tenant shall cause each subtenant or assignee to comply with such obligations. Any assignee shall be deemed to have assumed obligations as if such assignee had originally executed this Lease and at Landlord's request shall execute promptly a document confirming such assumption. Each sublease is subject to the condition that if the Lease Term is terminated or Landlord succeeds to Tenant's interest in the Premises by voluntary surrender or otherwise, at Landlord's option the subtenant shall be bound to Landlord for the balance of the term of such sublease and shall attorn to and recognize Landlord as its landlord under the then executory terms of such sublease. Tenant shall not mortgage this Lease without Landlord's prior written consent, which consent may be granted or withheld in Landlord's sole and absolute discretion. Tenant shall pay the costs (including attorneys' fees) incurred by Landlord in connection with Tenant's request for Landlord to consent to any assignment, sublease or mortgage. If Tenant intends to hire a real estate broker in connection with any proposed assignment or sublease, then Tenant shall so notify Landlord. At Landlord's option (to be exercised not later than ten (10) days after Landlord's receipt of such notice), Tenant shall hire Landlord (or its designee) as Tenant's exclusive broker and pay the customary commission charged by brokers in similar transactions.

If Tenant is a partnership, then any event(s) (whether or not voluntary, concurrent or related) which results in a dissolution of Tenant or a withdrawal or change of partners who, on the date of this Lease, own a controlling interest, shall be deemed a voluntary assignment of this Lease. Each general partner

shall be deemed to own a controlling interest. If Tenant is a corporation, then any event(s) (whether or not voluntary, concurrent or related) which results in a dissolution, merger, consolidation or other reorganization of Tenant, or sale, transfer or relinquishment of the interest of shareholders who, on the date of this Lease, own a controlling interest, shall be deemed a voluntary assignment of this Lease. The preceding sentence shall not apply to corporations whose stock is traded through a national or regional exchange or an over-the-counter market.

If Tenant wants to assign or sublet all or part of the Premises or this Lease, then Tenant shall give Landlord written notice ("Tenant's Request Notice") specifying the proposed assignee or subtenant and its business, the commencement date of the proposed assignment or sublease (the "Proposed Sublease Commencement Date"), the area proposed to be assigned or sublet (the "Proposed Sublet Space"), any premium or other consideration being paid for the proposed assignment or sublease and all other terms of the proposed assignment or sublease, and including the most recent financial statement and Dun and Bradstreet report of such assignee or subtenant and reasonably detailed information regarding such assignee or subtenant's reputation and business experience.

### 5. Repairs.

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

### 6. Alterations and Improvements.

Tenant, at Tenant's expense, shall have the right following Landlord's consent to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

### 7. Operating Charges and Real Estate Taxes

Tenant shall pay Tenant's proportionate share Operating Charges during each calendar year falling entirely or partly within the Lease Term. For purposes of this Section, Tenant's proportionate share shall be that percentage which is equal to a fraction, the numerator of which is the rentable area of the Premises, and the denominator of which is the rentable area of the Building.

Operating Charges mean the following expenses incurred by Landlord in the ownership and operation of the Building and the land upon which the Building is located (the "Land"): (1) water, sewer and other utility charges and electricity charges; (2) insurance premiums; (3) management fees; (4) costs of service and maintenance contracts; (5) maintenance, repair and replacement expenses; (6) amortization (on a

straight-line basis over the useful life (not to exceed ten years), at the time the expenditure was made) of capital expenditures made by Landlord to (A) reduce operating expenses if Landlord reasonably estimates that the annual reduction in operating expenses shall exceed such amortization, or (B) comply with laws or insurance requirements enacted or imposed after the date hereof; (7) charges for janitorial services; (8) reasonable reserves for replacements, repairs and contingencies; and (9) any other expense incurred by Landlord in owning, maintaining, repairing or operating the Building and the Land. Operating Charges do not include: principal or interest payments on any mortgage, deed of trust or ground lease; leasing commissions; depreciation of the Building except as specified above; and the costs of special services or utilities separately charged to particular tenants of the Building.

Real Estate Taxes mean (1) real estate taxes (including special assessments) imposed upon Landlord or assessed against the Building or the Land, (2) future taxes or charges imposed upon Landlord or assessed against the Building or the Land which are in the nature of or in substitution for real estate taxes, including any tax levied on or measured by rents payable, and (3) expenses incurred in reviewing or seeking a reduction of real estate taxes. Real Estate Taxes shall be deemed to include any taxes abated due to Landlord's substantial renovation, rehabilitation or replacement of the Building.

### 8. Insurance.

If the Leased Premises or any other party of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or a bated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the Building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $3,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord that a policy is due to expire at least (30) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the Building.

### 9. Utilities.

Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilize excessive

electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants.

Tenant shall not make or permit anyone to make any Alteration in or to the Premises or the Building without Landlord's prior written consent, which consent may be granted or withheld in Landlord's absolute discretion. Any Alteration made by Tenant shall be made: (a) in a good, workmanlike, first-class and prompt manner; (b) using new materials only; (c) by a contractor, on days and at times and under the supervision of an architect approved in writing by Landlord; (d) in accordance with plans and specifications prepared by an engineer or architect approved by Landlord and reviewed (at Landlord's standard charge) by Landlord; (e) in accordance with Laws, requirements of any firm insuring the Building and Building standards; (f) after obtaining a worker's compensation insurance policy approved in writing by Landlord and any bonds required by Landlord; (g) after delivering to Landlord written, unconditional waivers of mechanics' and materialmen's liens against the Premises and the Building from all proposed contractors, subcontractors, laborers and material suppliers; and (h) with respect to electrical and mechanical work, by a contractor designated by Landlord. If a lien (or a petition to establish a lien) is filed in connection with any Alteration, then such lien (or petition) shall be discharged by Tenant at Tenant's expense within ten (10) days thereafter by the payment thereof or filing of a bond acceptable to Landlord. Landlord's consent to an Alteration shall be deemed not to constitute Landlord's consent to subjecting its interest in the Premises or the Building to liens which may be filed in connection therewith. Tenant shall hire Landlord (or its designee) to perform any Alteration, provided that the charge to Tenant therefor is reasonable. Promptly after the completion of an Alteration, Tenant at its expense shall deliver to Landlord three (3) sets of accurate as-built drawings showing such Alteration.

If an Alteration is made without Landlord's prior written consent, then Landlord shall have the right at Tenant's expense to remove such Alteration and restore the Premises and the Building to their condition immediately prior thereto or to require Tenant to do the same. All Alterations to the Premises or the Building made by either party shall immediately become Landlord's property and shall be surrendered with the Premises at the expiration or earlier termination of the Lease Term, except that (a) if Tenant is not in default under this Lease, then Tenant shall have the right to remove, prior to the expiration or earlier termination of the Lease Term, movable furniture, movable furnishings and movable trade fixtures installed in the Premises by Tenant solely at Tenant's expense, and (b) Tenant shall be required to remove all Alterations to the Premises or the Building which Landlord designates in writing for removal. Movable furniture, furnishings and trade fixtures shall be deemed to exclude without limitation any item the removal of which might cause damage to the Premises or the Building or which would normally be removed from the Premises with the assistance of any tool or machinery other than a dolly. Landlord shall have the right to repair at Tenant's expense any damage to the Premises or the Building caused by such removal or to require Tenant to do the same. If any such item is not removed prior to the expiration or earlier termination of the Lease Term, then such item shall become Landlord's property and shall be surrendered with the Premises as a part thereof; provided, however, that Landlord shall have the right to remove such item from the Premises at Tenant's expense.

## 10. Signs.

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may ref use consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or

use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

### 11. Entry.

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

### 12. Parking.

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord, other tenants of the Building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footway s, subject to rules and regulations for the use thereof as prescribed from time to time by Landlord. Landlord reserves the right to designate parking areas within the Building or in reasonable proximity thereto, for Tenant and Tenant's agents and employees. Tenant shall provide Landlord with a list of all license numbers for the cars owned by Tenant, its agents and employees.

### 13. Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing.

### 14. Damage and Destruction.

Subject to Section 8 A. above, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

### 15. Holding Over

Tenant acknowledges that it is extremely important that Landlord have substantial advance notice of the date Tenant will vacate the Premises because Landlord will (a) require an extensive period to secure a

replacement tenant, and (b) plan its entire leasing and renovation program for the Building in reliance on its lease expiration dates. If the Premises are not surrendered at the expiration or earlier termination of Tenant's right of possession, then it will be conclusively presumed that the value of possession, and the resulting loss that will be suffered by Landlord, far exceed the Base Rent and additional rent that would have been payable had the Lease Term continued during such holdover period. Therefore if upon the expiration or earlier termination of Tenant's right of possession Tenant (or anyone claiming through Tenant) does not surrender immediately the Premises (or portion thereof), then the rent shall be increased to equal the greater of (1) fair market rent for the Premises, or (2) triple the Base Rent, additional rent and other sums that would have been payable pursuant to the provisions of this Lease (assuming the Lease Term for the entire Premises had continued during such holdover period). Such rent shall be computed on a monthly basis and shall be payable on the first day of such holdover period and the first day of each calendar month thereafter during such holdover period until the Premises have been vacated.

### 16. Default.

If default shall at any time be made by Tenant in the payment of rent when due to Landlord as herein provided, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by Tenant, and such default shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord without correction thereof then having been commenced and thereafter diligently prosecuted, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

Tenant shall operate its business in the Leased Premise continuously throughout the term of the Lease. It is expressly prohibited from ceasing of business, vacating or abandoning the Premises. Landlord's acceptance of any payment shall be deemed not to constitute a waiver of any breach or prejudice Landlord's rights and remedies. Re-entry and acceptance of keys shall not be considered an acceptance of a surrender of this Lease.

### 17. Bankruptcy

An Event of Bankruptcy is the occurrence with respect to Tenant, Guarantor or any other person liable for Tenant's obligations hereunder, including without limitation any general partner of Tenant ("General Partner") if Tenant is now or hereafter a partnership, of any of the following: (a) such person's becoming insolvent, as that term is defined in Title 11 of the United States Code (the "Bankruptcy Code"), or under the insolvency laws of any state (the "Insolvency Laws"); (b) appointment of a receiver or custodian for any property of such person, or the institution of a foreclosure or attachment action upon any property of any such person; (c) filing by such person of a voluntary petition under the provisions of the Bankruptcy Code or Insolvency Laws; (d) filing of an involuntary petition against such person as the subject debtor under the Bankruptcy Code or Insolvency Laws, which either (1) is not dismissed within thirty (30) days after filing, or (2) results in the issuance of an order for relief against the debtor; (e) such person's making or consenting to an assignment for the benefit of creditors or a composition of creditors; (f) such person's submitting (either before or after execution hereof) to Landlord any financial statement containing any material inaccuracy or omission; or (g) decrease by

850500541|ASSGN OF LEASES-RENTS|2007-08-27

fifty percent (50%) or more of such person's net worth below the net worth of such person as of the date hereof.

After the commencement of a case (the "Case") in which Tenant is the subject debtor under the Bankruptcy Code, (a) Tenant or its trustee in bankruptcy (collectively "Trustee") shall perform all of Tenant's post-petition obligations under this Lease, and (b) if Landlord is entitled to damages (including without limitation unpaid rent), then all such damages shall be entitled to administrative expense priority pursuant to Section 507(a)(1) of the Bankruptcy Code. If the Lease is assigned pursuant to the Bankruptcy Code, then the assignee shall be deemed without further act to have assumed all of Tenant's obligations under this Lease arising from and after such assignment and at Landlord's request shall execute an instrument confirming such assumption. Trustee shall not have the right to assume or assume and assign this Lease unless Trustee promptly (a) cures all defaults under this Lease, (b) compensates Landlord for damages incurred as a result of such defaults, (c) provides adequate assurance of future performance on the part of Trustee as debtor in possession or Trustee's assignee, and (d) complies with all other requirements of the Bankruptcy Code. If Trustee fails to assume or assign this Lease in accordance with the requirements of the Bankruptcy Code within sixty (60) days after the initiation of the Case (or, if shorter, the shortest period of time in which Trustee may be required to so act), then Trustee shall be deemed to have rejected this Lease. If this Lease is rejected or deemed rejected, then Landlord may exercise all rights and remedies available pursuant to this lease. Adequate assurance of future performance shall require (among other things) that the following minimum criteria be met: (1) Tenant's gross receipts in the ordinary course of business during the thirty (30) days preceding the Case must be greater than ten (10) times the next monthly installment of the Base Rent and additional rent; (2) Both the average and median of Tenant's monthly gross receipts in the ordinary course of business during the seven (7) months preceding the Case must be greater than ten (10) times the next monthly installment of the Base Rent and additional rent; (3) Trustee must pay its estimated pro rata share of the cost of all services performed or provided by Landlord (whether directly or through agents or contractors and whether or not previously included as part of the Base Rent) in advance of the performance or provision of such services; (4) Trustee must agree that Tenant's business shall be conducted in a first-class manner, and that no liquidating sale, auction or other non-first-class business operation shall be conducted in the Premises; (5) Trustee must agree that the use of the Premises as stated in this Lease shall remain unchanged and that no prohibited use shall be permitted; (6) Trustee must agree that the assumption or assumption or assignment of this Lease shall not violate or affect the rights of other tenants in the Building; (7) Trustee must pay at the time the next monthly installment of the Base Rent is due, in addition to such installment, an amount equal to the monthly installments of the Base Rent and additional rent due for the next six (6) months thereafter, such amount to be held as a security deposit; (8) Trustee must agree to pay immediately after Landlord draws on such security deposit the amount drawn; (9) Trustee must comply with all of Tenant's obligations under this Lease; and (10) All assurances of future performance specified in the Bankruptcy Code must be provided.

### 18. Quiet Possession.

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

### 19. Condemnation.

If any legally, constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes

850500541|ASSGN OF LEASES-RENTS|2007-08-27

possession, and Landlord and Ten ant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

### 20. Subordination.

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building, and Tenant agrees upon demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Landlord may request. In the event that Tenant should fail to execute any instrument of subordination herein require d to be executed by Tenant promptly as requested, Tenant hereby irrevocably constitutes Landlord as its attorney-in-fact to execute such instrument in Tenant's name, place and stead, it being agreed that such power is one coupled with an interest. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

### 21. Security Deposit.

The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Unless otherwise provided by mandatory non-waivable law or regulation, Landlord may commingle the Security Deposit with Landlord's other funds. Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrearages of rent or to satisfy any other covenant or obligation of Tenant hereunder. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of this Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant. If Landlord transfers its interest in the Premises during the term of this Lease, Landlord may assign the Security Deposit to the transferee and thereafter shall have no further liability for the return of such Security Deposit. The amount of the Security Deposit shall be ___$0.00___.

### 22. Quiet Enjoyment

If Tenant shall perform timely all of its obligations, then, subject to the provisions of this Lease, Tenant shall during the Lease Term peaceably and quietly occupy and enjoy possession of the Premises without hindrance by Landlord or anyone claiming through Landlord.

Landlord reserves the right to: (a) change the street address and name of the Building; (b) change the arrangement and location of entrances, passageways, doors, doorways, corridors, elevators, stairs, restrooms or other public parts of the Building; (c) erect, use and maintain pipes, conduits and other equipment in and through the Premises; (d) grant to anyone the exclusive right to conduct any particular business in the Building not inconsistent with the permitted use of the Premises; (e) use or lease exclusively the roof, sidewalks and other exterior areas; (f) resubdivide the Land or to combine the Land with other lands; (g) construct improvements on the Land and in the public and common areas of the Building; (h) relocate any parking area designated for Tenant's use and charge for permits to park in the underground garage; (i) display signs, advertisements and notices on any part of the exterior or interior of the Building; and (j) make alterations to the Premises after Tenant vacates the Premises or portion thereof and without relieving Tenant of its obligation to pay rent through the expiration of the Lease Term. Exercise of any such right shall not be considered a constructive eviction or a disturbance of Tenant's business or occupancy.

### 23. Sales Report

Tenant shall report its annual sales figures to Landlord by January 31 each year. The first reporting shall be made by January 31, 2008 and every year thereafter. Tenant must report monthly sales figures to Landlord, upon Landlord's request.

### 24. Notice.

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

4800 Walden Lane, Lanham, Maryland 20706-4884

If to Tenant to:

55 S. Constitution Drive, Aurora, IL 60506

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

### 25. Brokers.

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

### 26. Waiver.

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall

850500541|ASSGN OF LEASES-RENTS|2007-08-27

affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

### 27. Memorandum of Lease.

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

### 28. Headings.

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

### 29. Successors.

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

### 30. Consent.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

### 31. Performance.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lessor of twelve percent (12%) per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the un reimbursed balance plus accrued interest to Tenant on demand.

### 32. Compliance with Law.

Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

### 33. Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

850500541|ASSGN OF LEASES-RENTS|2007-08-27

### 34. Governing Law.

This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Illinois.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

**LANDLORD:**

**MS-GRAND HOLDINGS ILLINOIS, LLC,**
an Illinois limited liability company

By:  MS-Grand Investment, LLC, an Illinois
limited liability company, its Manager

By: _____
Min Sik Kang, Managing Member

**TENANT:**

**MS-GRAND AURORA, INC.,** an Illinois
corporation

By: _____
Min Sik Kang, President

Its:

850500541|ASSGN OF LEASES-RENTS|2007-08-27

## LEASE GUARANTY

The undersigned Guarantor, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and of the leasing by **MS GRAND HOLDINGS ILLINOIS, LLC**, an Illinois limited liability company, as Landlord, to **MS-GRAND AURORA, INC.**, an Illinois corporation, as Tenant, of certain premises located at 55 South Constitution Drive, Aurora, Illinois, pursuant to and as defined in a lease between them dated February 28, 2007 (herein as amended or modified called the "**Lease**"), does hereby unconditionally guarantee the payment of all rent and other charges and the performance by Tenant of all of its obligations under the Lease. Guarantor further covenants and agrees with Landlord, as follows:

(a)    That if an event of default, as defined in said Lease, shall have occurred and be continuing, Guarantor will, on demand, well and truly pay to Landlord any and all payments that have or will become due to Landlord under the Lease, and will perform or cause to be performed all of the covenants in the Lease to be performed by Tenant and, in addition, will pay all damages that may arise in consequence of such event of default and all costs and attorneys' fees that may be incurred by Landlord in enforcing Tenant's covenants and agreements set forth in the Lease or in enforcing the covenants and agreements of the Guarantor herein.

(b)    That, at Landlord's option, Guarantor may be brought into any action or proceeding commenced by Landlord against Tenant in connection with and based upon the Lease or any provision thereof, or Landlord may proceed separately against Guarantor, and recovery may be had against Guarantor in any such action or proceeding or in any independent action or proceeding against Guarantor, without any requirement that Landlord, its successors or assigns, first assert, prosecute or exhaust any remedy or claim against Tenant, its successors and/or assigns.

(c)    That in the event of any bankruptcy, reorganization, winding-up or similar proceedings with respect to Tenant, no discharge, modification or limitation of Tenant's liability under the Lease which may now or hereafter be imposed by any federal, state or other law or regulation applicable to such proceedings shall discharge, limit or modify the obligation of Guarantor hereunder, which obligation is co-extensive with Tenant's liability as set forth in the Lease without regard to any such discharge, limitation or modification.

(d)    That this Guaranty shall remain in full force and effect as to any renewal, extension, modification or amendment of the Lease and shall guarantee performance and payment under the Lease by any assignee of the interest of the Tenant under the Lease.

(e)    That Landlord's interest under this Guaranty may be assigned by it by way of security or otherwise without the consent of the undersigned.

(f)    Guarantor waives notice of events of default under the Lease and notices or demands given by Landlord to Tenant.

(g)     Landlord may, from time to time, without notice to or consent of the undersigned, (i) retain or obtain the primary or secondary liability of any party or parties, in addition to the undersigned, with respect to any of the obligations guaranteed hereby, (ii) extend or renew for any period (whether or not longer than the original period) or alter any of the obligations guaranteed hereby, (iii) release or compromise any liability of the Tenant or any liability of any other party or parties primarily or secondarily liable on any of the obligations guaranteed hereby, and (iv) release, compromise or subordinate its title or security interest, if any, in all or any property now or hereafter securing any of the obligations guaranteed hereby.

(h)     The undersigned waives: (i) notice of the existence or creation of all or any of the obligations guaranteed hereby, (ii) notice of any alteration, amendment, increase, extension or exchange of any of the obligations guaranteed hereby or of any events of a nature set out in the preceding or succeeding paragraphs, (iii) notice of any amendment or modification of the Lease, (iv) all diligence in collection or protection of or realization upon the obligations guaranteed hereby or any thereof, any obligation hereunder, or any security therefore, and (v) the right to require Landlord to proceed against Tenant on any of the obligations guaranteed hereby.

(i)     No delay or failure on the part of Landlord in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Landlord of any right or remedy shall preclude other or future exercise thereof or the exercise of any other right or remedy. No action of Landlord permitted hereunder shall impair or affect this Guaranty.

(j)     Guarantor waives any right of subrogation or contribution which Guarantor may have or hereafter obtain as against the Tenant.   Without limiting the foregoing, Guarantor subordinates any claim which he may have or obtain against the Tenant and any debt which Guarantor holds or hereafter obtains from Tenant to the indebtedness due Landlord under the Lease and this Guaranty.

(k)     This Guaranty shall be construed and governed under the laws of the State of Illinois.

(l)     Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

(m)     If this Guaranty is signed by more than one guarantor, their obligations are joint and several.  Masculine pronouns include the feminine and neuter.  This Guaranty binds and inures to the benefit of Landlord, Guarantors and their heirs, successors and assigns.

*[Remainder of Pate Intentionally Left Blank—Signature Page Follows]*

850500541|ASSGN OF LEASES-RENTS|2007-08-27

IN WITNESS WHEREOF, Guarantor has signed and this Guaranty the 28th day of February, 2007.

Guarantor's Address:                            **GUARANTOR:**

4800 Walden Lane
Lanham, Maryland 20706-4884                     Min Sik Kang

- 3 -