IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-TOP27,<br><br>Plaintiff,<br><br>v.<br><br>MS-Grand Holdings Illinois, LLC, an Illinois limited liability company and Min Sik Kang,<br><br>Defendants. | Case Number: 10-1716<br><br>District Judge: Ronald A. Guzman<br><br>Magistrate Judge: Arlander Keys |

## JUDGMENT AFFIDAVIT OF DON EDWARDS IN SUPPORT OF PLAINTIFF'S RULE 55 MOTION FOR DEFAULT JUDGMENT

I, Don Edwards, first duly sworn under oath, states as follows:

1. I am over eighteen (18) years of age, I have personal knowledge of the facts stated herein, and I am authorized and competent to make this Affidavit on behalf of Plaintiff Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-TOP27 ("Plaintiff"), by C-III Asset Management LLC, a Delaware limited liability company (f/k/a Centerline Servicing Inc.) ("C-III Asset"), in its capacity as special servicer for Plaintiff pursuant to that certain Pooling and Servicing Agreement dated as of July 1, 2007.

2. I am a Servicing Officer of C-III Asset.

3. I have read the Verified Complaint to Foreclose Mortgages and Other Relief filed in this action, including the exhibits attached thereto (the "Verified Complaint"). I affirm the accuracy of the facts alleged in the Verified Complaint and incorporate them by reference into this Affidavit.

4. The Verified Complaint seeks to foreclose against three (3) different mortgages that encumber property located in Cook, Kane and Will Counties, Illinois and were granted as security for a single $15,000,000 loan (see generally Counts I through III (inclusive) of the Verified Complaint).

5. Each of the three properties at issue were to be operated as grocery stores.

6. The Verified Complaint also seeks recovery from Defendant Min Sik Kang who guaranteed certain lease obligations relating to the properties being foreclosed.

1

7. Plaintiff, as successor by merger to LaSalle Bank National Association, acts as Trustee for Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-TOP27.

8. Defendant MS-Grand Holdings Illinois, LLC ("MS-Grand" or "Borrower") is an Illinois limited liability company.

9. Defendant Min Sik Kang is a member of MS-Grand and a Maryland resident, residing at 4800 Walden Lane, Lanham, Maryland, 20706.

10. The first instrument sought to be foreclosed in this action is that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated March 1, 2007, duly executed by the Borrower, as mortgagor, in favor of Mortgage Electronic Registration Systems, Inc., a Delaware corporation, as mortgagee and Lender's nominee ("MERS" or "Original Mortgagee"), which was recorded on April 5, 2007 with the Cook County, Illinois Recorder's Office (the "Cook County Official Records"), and bearing the identification number 0709518080 (the "Bridgeview Mortgage"). A true and complete copy of the Bridgeview Mortgage is attached to the Verified Complaint as Exhibit A and incorporated herein by express reference.

11. The second instrument sought to be foreclosed in this action is that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated March 1, 2007, duly executed by the Borrower, as mortgagor, in favor of MERS, which was recorded on April 10, 2007 with the Will County, Illinois Recorder's Office (the "Will County Official Records"), and bearing the identification number R2007054689 (the "Joliet Mortgage"). A true and complete copy of the Joliet Mortgage is attached to the Verified Complaint as Exhibit B and incorporated herein by express reference.

12. The third instrument sought to be foreclosed in this action is that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated March 1, 2007, duly executed by the Borrower, as mortgagor, in favor of MERS, which was recorded on April 17, 2007 in the official records of the Kane County, Illinois Recorder's Office (the "Kane County Official Records"), and bearing the identification number 2007K041656 (the "Aurora Mortgage" and, together with the Bridgeview Mortgage and Joliet Mortgage, the "Mortgages"). A true and complete copy of the Aurora Mortgage is attached to the Verified Complaint as Exhibit C and incorporated herein by express reference.

13. C-III Asset is the special servicer for Plaintiff for this loan, and has the power and authority to administer the loan for Plaintiff and to enforce the terms of the loan documents at issue herein.

14. The three Mortgages secure a loan in the amount of $15,000,000 (the "Loan") evidenced by that certain Promissory Note (the "Note"), dated March 1, 2007 and duly executed by Borrower in favor of Bear Stearns Commercial Mortgage Inc., a New York corporation ("Lender"). A true and complete copy of the Note is attached to the Verified

Complaint as <u>Exhibit D</u> and incorporated herein by express reference.

15. Borrower also duly executed that certain Assignment of Leases and Rents, dated March 1, 2007 and recorded on April 5, 2007 in the Cook County Official Records, and bearing the identification number 0709518081 (the "Bridgeview Assignment of Leases and Rents"). A true and complete copy of the Bridgeview Assignment of Leases and Rents is attached to the Verified Complaint as <u>Exhibit E</u> and incorporated herein by express reference.

16. Borrower also duly executed that certain Assignment of Leases and Rents, dated March 1, 2007 and recorded on April 10, 2007 in the Will County Official Records, and bearing the identification number R2007054690 (the "Joliet Assignment of Leases and Rents"). A true and complete copy of the Joliet Assignment of Leases and Rents is attached to the Verified Complaint as <u>Exhibit F</u> and incorporated herein by express reference.

17. Borrower also duly executed that certain Assignment of Leases and Rents, dated March 1, 2007 and recorded on April 17, 2007 in the Kane County Official Records, and bearing the identification number 2007K041657 (the "Aurora Assignment of Leases and Rents" and, together with the Bridgeview Assignment of Leases and Rents and Joliet Assignment of Leases and Rents, the "Assignments of Leases and Rents"). A true and complete copy of the Aurora Assignment of Leases and Rents is attached to the Verified Complaint as <u>Exhibit G</u> and incorporated herein by express reference.

18. The Mortgages, the Assignments of Leases and Rents, the Note, together with all other documents evidencing, securing or relating to the Loan are sometimes referred to as "Loan Documents."

19. The Mortgages constitute valid, prior and paramount liens upon the indicated interest in the mortgaged real estate, which liens are prior and superior to the right, title, interest, claim or lien of all parties whose interests in the mortgaged real estate are sought to be terminated.

20. Plaintiff brings this foreclosure action as the assignee of the original mortgagee.

21. MERS in its capacity as mortgagee and Lender's nominee, assigned the Bridgeview Mortgage and other Loan Documents to Plaintiff via that certain Assignment of Mortgage, Assignment of Leases and Rents and Fixture Filing & Assignment of Leases and Rents, executed on July 1, 2007, recorded in the Cook County Official Records on August 14, 2009 as Document No. 0922639041 ("Assignment of Bridgeview Mortgage"). A true and correct copy of the Assignment of Bridgeview Mortgage is attached to the Verified Complaint as <u>Exhibit H</u>, and is incorporated herein by express reference.

22. MERS assigned the Joliet Mortgage and other Loan Documents to Plaintiff via that certain Assignment of Mortgage, Assignment of Leases and Rents and Fixture Filing & Assignment of Leases and Rents, executed on July 1, 2007, recorded in the Will County Official Records on August 14, 2009 as Document No. R2009099673 ("Assignment of Joliet Mortgage"). A true and correct copy of the Assignment of Joliet Mortgage is attached to the

Verified Complaint as <u>Exhibit I</u>, and is incorporated herein by express reference.

23. MERS assigned the Aurora Mortgage and other Loan Documents to Plaintiff via that certain Assignment of Mortgage, Assignment of Leases and Rents and Fixture Filing & Assignment of Leases and Rents, executed on July 1, 2007, recorded in the Kane County Official Records on August 14, 2009 as Document No. 2009K062323 ("Assignment of Aurora Mortgage"). A true and correct copy of the Assignment of Aurora Mortgage is attached to the Verified Complaint as <u>Exhibit J</u>, and is incorporated herein by express reference.

24. Lender endorsed the Note to Plaintiff and Plaintiff holds the Note.

25. The interest subject to the Bridgeview Mortgage is a fee simple estate.

26. The legal description of the real estate mortgaged by the Bridgeview Mortgage is as follows:

PARCEL 1:

LOT 1 IN DAVID'S SUBDIVISION OF PART OF THE EAST 1/2 OF THE SOUTHEAST 1/4 OF SECTION 12, TOWNSHIP 37 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 11, 2000 AS DOCUMENT 00250979, IN COOK COUNTY, ILLINOIS.

PARCEL 2:

NON-EXCLUSIVE EASEMENT FOR PARKING, INGRESS AND EGRESS FOR THE BENEFIT OF PARCEL 1 AS CREATED BY AGREEMENT DATED FEBRUARY 24, 1995 AND RECORDED MARCH 14, 1995 AS DOCUMENT 95171424 AND FIRST AMENDMENT THEREOF DATED APRIL 16, 1999 AND RECORDED JUNE 17, 1999 AS DOCUMENT 99582111. ASSIGNMENT AND ASSUMPTION OF RECIPROCAL EASEMENT AGREEMENT RECORDED APRIL 5, 2007 AS DOCUMENT 0709518079.

27. The common address of the real estate mortgaged by the Bridgeview Mortgage (the "Bridgeview Property") is 10280 South Harlem Avenue, Bridgeview, Illinois.

28. The interest subject to the Joliet Mortgage is a fee simple estate.

29. The legal description of the real estate mortgaged by the Joliet Mortgage is as follows:

PARCEL 1:

LOT 2 IN STEAK-N-SHAKE SUBDIVISION, BEING A SUBDIVISION OF PART OF THE WEST 1/2 OF THE NORTHEAST 1/4 OF SECTION 18, TOWNSHIP 35 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED

MARCH 13, 1995, AS DOCUMENT R95-15757, IN WILL COUNTY, ILLINOIS.

PARCEL 2:

PERPETUAL NON-EXCLUSIVE EASEMENTS FOR THE BENEFIT OF PARCEL 1, OVER, THROUGH AND AROUND THE ROADWAYS, WALKWAYS AND PARKING AREAS ON THE COMMON AREAS OF WAL-MART PROPERTIES, INC., FOR PEDESTRIAN AND VEHICULAR INGRESS AND EGRESS (INCLUDING THE INGRESS AND EGRESS OF SEMI-TRAILERS AND OTHER DELIVERY VEHICLES SERVICING THE BUSINESSES AND OCCUPANTS LOCATED ON PARCEL 1) CUSTOMER AND EMPLOYEE PARKING OF AUTOMOBILES AND OTHER VEHICLES (NOT INCLUDING SEMI-TRAILERS OR OTHER DELIVERY VEHICLES) AND THE USE OF FACILITIES INSTALLED THEREON FOR THE COMFORT AND CONVENIENCE OF CUSTOMERS, INVITEES, LICENSEES, TENANTS AND EMPLOYEES OF ALL BUSINESSES AND OCCUPANTS OF THE BUILDINGS CONSTRUCTED ON THE BUILDINGS AREAS DEFINED THEREIN, AS ESTABLISHED, CREATED, DEFINED AND LIMITED BY EASEMENTS WITH COVENANTS AND RESTRICTIONS DATED APRIL 6, 1988 AND RECORDED JULY 18, 1988 AS DOCUMENT R88-32080 AND AMENDED BY INSTRUMENT DATED JUNE 28, 1988 AND RECORDED JULY 18, 1988 AS DOCUMENT R88-32081 BY AND BETWEEN WAL-MART PROPERTIES, INC., A DELAWARE CORPORATION AND LASALLE NATIONAL BANK, AS TRUSTEE UNDER TRUST AGREEMENT DATED FEBRUARY 29, 1988 KNOWN AS TRUST NUMBER 113038, AS AMENDED BY SECOND AMENDMENT DATED OCTOBER 11, 1991 AND RECORDED JANUARY 16, 1992 AS DOCUMENT R92-3859 MADE BY AND BETWEEN WAL-MART PROPERTIES, INC. AND SUPER VALU STORES, INC., OVER THE LAND, DESCRIBED AS FOLLOWS:

THE SOUTH 997.60 FEET OF THE WEST 1/2 OF THE NORTHEAST 1/4 OF SECTION 18, TOWNSHIP 35 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING WEST OF LARKIN AVENUE, EXCEPTING THE SOUTH 425.00 FEET OF THE EAST 250.00 FEET OF SAID WEST 1/2 OF THE NORTHEAST 1/4 AND EXCEPTING THAT PART TAKEN BY THE STATE OF ILLINOIS FOR I-80 PURSUANT TO CONDEMNATION ORDER IN CASE 12655C;

ALSO,
EXCEPTING THAT PART CONVEYED TO THE CITY OF JOLIET BY DOCUMENT R88-10019, AND SUBJECT TO A DEDICATION OF RIGHT OF WAY FOR PUBLIC ROAD PURPOSES, RECORDED AS DOCUMENT 672360, MORE

PARTICULARLY DESCRIBED TO WIT:

COMMENCING AT A P. K. NAIL AT THE SOUTHWEST CORNER OF THE NORTHWEST 1/4 OF SAID SECTION 18; THENCE NORTH 89 DEGREES, 48 MINUTES, 11 SECONDS EAST, A DISTANCE OF 3047.00 FEET TO A BRASS MONUMENT IN THE PAVEMENT OF MCDONOUGH STREET BEING THE SOUTHWEST CORNER OF THE NORTHEAST 1/4 OF SAID SECTION 18 AT THE POINT OF BEGINNING; THENCE ALONG THE WEST LINE OF THE NORTHEAST 1/4 OF SAID SECTION 18 NORTH 00 DEGREES 03 MINUTES, 22 SECONDS WEST 997.60 FEET TO A 5/8-INCH DIAMETER STEEL BAR; THENCE NORTH 89 DEGREES, 48 MINUTES, 11 SECONDS EAST A DISTANCE OF 1295.53 FEET TO A 5/8-INCH DIAMETER STEEL BAR, SAID POINT BEING ON THE WEST RIGHT OF WAY LINE OF LARKIN AVENUE; THENCE ALONG THE WEST RIGHT OF WAY LINE OF LARKIN AVENUE SOUTH 00 DEGREE, 56 MINUTES, 58 SECONDS WEST 330.67 FEET TO A 5/8-INCH DIAMETER STEEL BAR, THENCE SOUTH 89 DEGREES 48 MINUTES, 11 SECONDS WEST 33.69 FEET TO A 5/8-INCH DIAMETER STEEL BAR, THENCE SOUTH 00 DEGREE, 13 MINUTES, 36 SECONDS EAST, A DISTANCE OF 242.00 FEET TO A 5/8-INCH DIAMETER STEEL BAR; THENCE LEAVING SAID WEST RIGHT OF WAY LINE SOUTH 89 DEGREES, 48 MINUTES, 11 SECONDS WEST 180.00 FEET TO A 5/8-INCH DIAMETER STEEL BAR; THENCE SOUTH 00 DEGREE, 13 MINUTES, 36 SECONDS EAST, A DISTANCE OF 380.00 FEET TO A 5/8-INCH DIAMETER STEEL BAR ON THE NORTH RIGHT OF WAY LINE OF MCDONOUGH STREET; THENCE ALONG SAID NORTH RIGHT OF WAY LINE OF MCDONOUGH STREET SOUTH 86 DEGREES, 47 MINUTES, 25 SECONDS WEST 190.26 FEET TO A 5/8-INCH DIAMETER STEEL BAR, THENCE SOUTH 00 DEGREE, 13 MINUTES, 36 SECONDS EAST, A DISTANCE OF 35.00 FEET TO A POINT ON THE SOUTH LINE OF THE NORTHEAST 1/4 OF SAID SECTION 18; THENCE ALONG SAID SOUTH LINE SOUTH 89 DEGREES, 48 MINUTES, 11 SECONDS WEST, A DISTANCE OF 888.03 FEET TO THE POINT OF BEGINNING, EXCEPTING THEREFROM THAT PART OF THE LAND FALLING IN DOCUMENT R88-32079, ALL IN WILL COUNTY, ILLINOIS.

30. The common address of the real estate mortgaged by the Joliet Mortgage (the "Joliet Property") is 191 S. Larkin Avenue, Joliet, Illinois.

31. The interest subject to the Aurora Mortgage is a fee simple estate.

32. The legal description of the real estate mortgaged by the Aurora Mortgage is as follows:

LOT 1 IN W. REIMERS SUBDIVISION OF PART OF THE

NORTH 1/2 SECTION 19, TOWNSHIP 38 NORTH, RANGE 8 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN KANE COUNTY, ILLINOIS

33. The common address of the real estate mortgaged by the Aurora Mortgage (the "Aurora Property" and, with the Bridgeview Property and Joliet Property, the "Properties") is 55 South Constitution Drive, Aurora, Illinois.

34. Borrower, MS-Grand Holding Illinois LLC, is the owner of all three (3) Properties.

35. Borrower has failed to pay certain amounts as they came due under the Note, and the failure to pay such amounts constitutes an Event of Default under each of the Mortgages. *See* Exhibit A to Verified Complaint [Bridgeview Mortgage] at § 10.1(a); Exhibit B to Verified Complaint [Joliet Mortgage] at § 10.1(a); Exhibit C to Verified Complaint [Aurora Mortgage] at § 10.1(a).

36. Borrower did not pay its scheduled monthly payment of principal and interest for the months of January, February, March, April, May, June, July, August, September, October, November, and December 2009 and, for 2010, the months of January, February, March, April, May, June and July.

37. On May 11, 2009, Plaintiff, through counsel, sent a notice of default to the Borrower providing formal notice of the acceleration of the loan and demand for immediate payment of all outstanding amounts (the "Notice of Default"). A true and correct copy of the Notice of Default is attached to the Verified Complaint as <u>Exhibit K</u>, and is incorporated herein by express reference.

38. As of March 1, 2010, the amounts due and owing from the Borrower to Plaintiff, in addition to the prepayment fee, advances, attorneys' fees and other costs and expenses, and less credits for any escrows, reserves or impounds, include the following:

| | |
|---|---:|
| Unpaid Principal Balance: | $14,560,831.29 |
| Default Interest: | $849,381.83 |
| Accrued Interest | $1,129,592.85 |
| Late Fees: | $131,941.03 |
| **Total:** | **$16,641,747.00** |

39. Pursuant to the Note, the rate for interest accruing on the indebtedness secured by the Mortgage is 6.138% or $2,482.62 per diem based on the outstanding principal balance. The per diem default rate for interest (above and beyond the regular note rate) accruing on the indebtedness secured by the Mortgage is an additional 5.0% or $2,022.34 per diem based on the outstanding principal balance.

40. It is an event of default under each of the Mortgages to allow the property to become subject to any lien for a period longer than 60 days. *See* Exhibit A to Verified

Complaint [Bridgeview Mortgage] at § 10.1(i); *see* Exhibit B to the Verified Complaint [Joliet Mortgage] at § 10.1(i); *see* Exhibit C to the Verified Complaint [Aurora Mortgage] at § 10.1(i).

41. The Bridgeview property is subject to a mowing lien dated June 12, 2007 and recorded on June 13, 2007 in the Cook County Official Records as Document No. 0716446100 claimed by the Village of Bridgeview in the amount of $370.21 plus interest. A true and complete copy of the lien is attached to the Verified Complaint as <u>Exhibit L</u> and incorporated herein by reference.

42. The Bridgeview property is subject to a mowing lien dated August 7, 2007 and recorded on August 9, 2007 in the Cook County Official Records as Document No. 0722108120 claimed by the Village of Bridgeview in the amount of $505.21 plus interest. A true and complete copy of the lien is attached to the Verified Complaint as <u>Exhibit M</u> and incorporated herein by reference.

43. The Joliet property is subject to a mowing lien dated January 23, 2008 and recorded on February 8, 2008 in the Will County Official Records as Document No. R2008017357 claimed by the City of Joliet in the amount of $134. A true and complete copy of the lien is attached to the Verified Complaint as <u>Exhibit N</u> and incorporated herein by reference.

44. The Aurora property is subject to a mowing lien dated September 3, 2008 and recorded on September 8, 2008 in the Kane County Official Records as Document No. 2008K070457 claimed by the City of Aurora in the amount of $700.00. A true and complete copy of the lien is attached to the Verified Complaint as <u>Exhibit O</u> and incorporated herein by reference.

45. The Aurora property is subject to a mowing lien dated September 12, 2008 and recorded on September 17, 2008 in the Kane County Official Records as Document No. 2008K072920 claimed by the City of Aurora in the amount of $700.00. A true and complete copy of the lien is attached to the Verified Complaint as <u>Exhibit P</u> and incorporated herein by reference.

46. The Aurora property is subject to a mowing lien dated September 12, 2008 and recorded on September 17, 2008 in the Kane County Official Records as Document No. 2008K072921 claimed by the City of Aurora in the amount of $920.00. A true and complete copy of the lien is attached to the Verified Complaint as <u>Exhibit Q</u> and incorporated herein by reference.

47. Because an Event of Default has occurred under each of the Mortgages and Loan Documents, Plaintiff is entitled to foreclose. *See* Exhibit A to the Verified Complaint [Bridgeview Mortgage] at § 11.1(b); *see* Exhibit B to the Verified Complaint [Joliet Mortgage] at § 11.1(b); *see* Exhibit C to the Verified Complaint [Aurora Mortgage] at § 11.1(b).

48. Borrower has waived any and all right to redemption and reinstatement. *See* Exhibit A to the Verified Complaint [Bridgeview Mortgage] at § 23.6; *see* Exhibit B to the

Verified Complaint [Joliet Mortgage] at § 23.6; *see* Exhibit C to the Verified Complaint [Aurora Mortgage] at § 23.6.

49. Any and all periods of grace or other periods of time allowed for the performance of the covenants or conditions claimed to be breached or for the curing of any breaches have expired.

50. In support of its request for attorneys' fees, costs, and expenses in the judgment of foreclosure sought herein, Plaintiff states that the Mortgages provide for payment of attorneys' fees, costs and expenses in the event of a default and such default has occurred. *See* Exhibit A to the Verified Complaint [Bridgeview Mortgage] at § 20.2; *see* Exhibit B to the Verified Complaint [Joliet Mortgage] at § 20.2; *see* Exhibit C to the Verified Complaint [Aurora Mortgage] at § 20.2.

51. Plaintiff has been compelled to employ and retain attorneys to prepare and file the Verified Complaint and to represent and advise Plaintiff in connection with the foreclosure of the Bridgeview Mortgage and Plaintiff will thereby become liable for the usual, reasonable and customary fees of the attorneys in that behalf.

52. Plaintiff has been compelled to advance or will be compelled to advance various sums of money in payment of costs, fees, expenses and disbursements incurred in connection with the foreclosure, including, without limiting the generality of the foregoing, filing fees, stenographer's fees, witness fees, costs of publication, costs of procuring and preparing documentary evidence and costs of procuring abstracts of title, foreclosure minutes and a title insurance policy.

53. Under the terms of each of the Mortgages, all such advances, costs, attorneys' fees and other fees, expenses and disbursements are made a part of the debt secured by the Mortgages. *See* Exhibit A to the Verified Complaint [Bridgeview Mortgage] at §§ 2.1(c), 20.2; *see* Exhibit B to the Verified Complaint [Joliet Mortgage] at §§ 2.1(c), 20.2; *see* Exhibit C to the Verified Complaint [Aurora Mortgage] at §§ 2.1(c), 20.2.

54. In order to protect the lien of each of the Mortgages, it may become necessary for Plaintiff to pay taxes and assessments which have been or may be levied upon the mortgaged real estate.

55. By the Bridgeview Assignment of Leases and Rents, Borrower MS-Grand assigned to Plaintiff, *inter alia*, all of Borrower's rights, title and interest to any "Lease Guaranties" regarding the Bridgeview Property.

56. The only tenant of the Bridgeview Property is MS-Grand Bridgeview, Inc., an Illinois corporation (the "Bridgeview Tenant").

57. A copy of the Bridgeview Tenant's lease (the "Bridgeview Lease") for the Bridgeview Property is attached as Exhibit A to the Bridgeview Assignment of Leases and Rents [Exhibit E to the Verified Complaint].

58. The Bridgeview Lease commenced February 28, 2007 and was to end on February 28, 2032. The annual rent was $719,818.00.

59. Borrower MS-Grand was the lessor and acted as the landlord to the Bridgeview Tenant.

60. Defendant Min Sik Kang ("Kang") is the President of the Bridgeview Tenant and the managing member of MS Grand's manager.

61. In other words, a Kang-related entity was the owner and landlord of the Bridgeview Property, and another Kang-related entity was the tenant in the Bridgeview Property.

62. Kang guaranteed payment of all the Bridgeview Tenant's obligations under the Bridgeview Lease to Borrower MS-Grand (the "Bridgeview Lease Guaranty"). A true and correct copy of the Bridgeview Lease Guaranty is attached to as Exhibit A to the Bridgeview Assignment of Leases and Rents [Exhibit E to the Verified Complaint] and is incorporated herein by express reference.

63. Since an event of Default has occurred under the Bridgeview Mortgage, Plaintiff is entitled to "in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid..." *See* Bridgeview Assignment of Leases and Rents [Exhibit E to the Verified Complaint] at §3.1, pages 3-4.

64. To Plaintiff's knowledge, the Bridgeview Tenant has never paid any rent to MS-Grand.

65. Plaintiff demanded that the Bridgeview Tenant pay any and all sums due and owing under the Bridgeview Lease. The Bridgeview Tenant failed to pay said sums within the 15 day period required by the Bridgeview Lease.

66. Despite demand for payment, Kang has failed to pay the amounts he owes to Plaintiff under the Bridgeview Assignment of Leases and Rents and Bridgeview Lease Guaranty.

67. Pursuant to the Bridgeview Assignment of Leases and Rents and Bridgeview Lease Guaranty, Plaintiff is entitled to judgment against Kang for $17,995,450 for all rent owed under the Bridgeview Lease, plus costs and reasonable attorneys fees in collection and enforcement, *inter alia,* of the Bridgeview Assignment of Leases and Rents and Bridgeview Lease Guaranty. *See* Bridgeview Assignment of Leases and Rents [Exhibit E to the Verified Complaint] at §3.1, pages 3-4.

68. By the Joliet Assignment of Leases and Rents, Borrower MS-Grand assigned to Plaintiff, *inter alia,* all of Borrower's rights, title and interest to any "Lease Guaranties"

regarding the Joliet Property.

69. The primary tenant of the Bridgeview Property is MS-Grand Joliet, Inc., an Illinois Corporation (the "Joliet Tenant").

70. A copy of the Joliet Tenant's lease (the "Joliet Lease") for the Joliet Property is attached as Exhibit A to the Joliet Assignment of Leases and Rents [Exhibit F to the Verified Complaint].

71. The Joliet Lease commenced February 28, 2007 and was to end on February 28, 2032. The annual rent was $640,640.00.

72. Borrower MS-Grand was the lessor and acted as the landlord to the Joliet Tenant.

73. Kang guaranteed payment of all the Joliet Tenant's obligations under the Joliet Lease to Borrower MS-Grand (the "Joliet Lease Guaranty"). A true and correct copy of the Joliet Lease Guaranty is attached as Exhibit A to the Joliet Assignment of Leases and Rents [Exhibit F to the Verified Complaint] and is incorporated herein by express reference.

74. Since an event of Default has occurred under the Joliet Mortgage, Plaintiff is entitled to "in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid..." *See* Joliet Assignment of Leases and Rents [Exhibit F to the Verified Complaint] at §3.1, pages 3-4.

75. To Plaintiff's knowledge, the Joliet Tenant has never paid any rent to MS-Grand.

76. Plaintiff demanded that the Joliet Tenant pay any and all sums due and owing under the Joliet Lease. The Joliet Tenant failed to pay said sum within the 15 day period required by the Joliet Lease.

77. Despite demand for payment, Kang has failed to pay the amounts he owes to Plaintiff under the Joliet Assignment of Leases and Rents and Joliet Lease Guaranty.

78. Pursuant to the Joliet Assignment of Leases and Rents and Joliet Lease Guaranty, Plaintiff is entitled to judgment against Kang for $16,016,000 for all rent owed under the Joliet Lease, plus costs and reasonable attorneys fees in collection and enforcement, *inter alia,* of the Joliet Assignment of Leases and Rents and Joliet Lease Guaranty. *See* Joliet Assignment of Leases and Rents [Exhibit F to the Verified Complaint] at §3.1, pages 3-4.

79. By the Aurora Assignment of Leases and Rents, Borrower MS-Grand assigned to Plaintiff, *inter alia*, all of Borrower's rights, title and interest to any "Lease Guaranties" regarding the Aurora Property.

80. The primary tenant of the Aurora Property is MS-Grand Aurora, Inc., an Illinois

Corporation (the "Aurora Tenant").

81. A copy of the Aurora Tenant's lease (the "Aurora Lease") for the Aurora Property is attached as Exhibit A to the Aurora Assignment of Leases and Rents [Exhibit G to the Verified Complaint].

82. The Aurora Lease commenced February 28, 2007 and was to end on February 28, 2032. The annual rent was $704,704.00.

83. Borrower MS-Grand was the lessor and acted as the landlord to the Aurora Tenant.

84. Kang guaranteed payment of all the Aurora Tenant's obligations under the Aurora Lease to Borrower MS-Grand (the "Aurora Lease Guaranty"). A true and correct copy of the Aurora Lease Guaranty is attached as Exhibit A to the Aurora Assignment of Leases and Rents [Exhibit G to the Verified Complaint] and is incorporated herein by express reference.

85. Since an event of Default has occurred under the Aurora Mortgage, Plaintiff is entitled to "in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid..." *See* Aurora Assignment of Leases and Rents [Exhibit G to the Verified Complaint] at §3.1, pages 3-4.

86. To Plaintiff's knowledge, the Aurora Tenant has never paid any rent to MS-Grand.

87. Plaintiff demanded that the Aurora Tenant pay any and all sums due and owing under the Aurora Lease. The Aurora Tenant failed to pay said sum within the 15 day period required by the Aurora Lease.

88. Despite demand for payment, Kang has failed to pay the amounts he owes to Plaintiff under the Aurora Assignment of Leases and Rents and Aurora Lease Guaranty.

89. Pursuant to the Aurora Assignment of Leases and Rents and Aurora Lease Guaranty, Plaintiff is entitled to judgment against Kang for $17,617,600 for all rent owed under the Aurora Lease and costs and reasonable attorneys fees in collection and enforcement, *inter alia,* of the Aurora Assignment of Leases and Rents and Aurora Lease Guaranty. *See* Aurora Assignment of Leases and Rents [Exhibit G to the Verified Complaint] at §3.1, pages 3-4.

I affirm under the penalties for perjury that the foregoing facts and statements are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

Dated: August 23, 2010

[Name]

Sworn to and subscribed before
me on this 23rd day of August, 2010.

_____
Notary Public

ROBIN BEHRNS
Notary Public, State of Texas
My Commission Expires
February 14, 2014

CHDS01 JRIAZI 615231v1

13